## Thompson v. Commonwealth.

April 17, 1945.

A. W. Mann for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Cammack—Affirming.

Omar Thompson, a cripple, 26 years of age, was found guilty of aiding and abetting Jack Washer and Norman Ledbetter, both of whom are 18 years of age, in assaulting with intent to rob Leroy Jenkins. He was given the minimum punishment of 21 years in prison.

Reversal is urged on the grounds that there was no evidence corroborating that of the accomplices, and incompetent evidence was admitted.

The accomplices confessed to their part in the crime and testified for the Commonwealth against Thompson. The Commonweatlh introduced no other testimony con-

necting Thompson directly with the crime. However, when his motion for a peremptory instruction was overruled at the conclusion of the Commonwealth's evidence, he took the stand in his own behalf, and, as we view his evidence, made out a case for the Commonwealth. In other words, he supplied the corroborating testimony required under section 241 of the Criminal Code of Practice. The rule is that, where an accused's motion for a peremptory instruction is erroneously overruled, and he then introduces evidence, which, together with the Commonwealth's evidence is sufficient to take the case to the jury, a judgment of conviction will not be reversed. Gordon v. Commonwealth, 146 Ky. 61, 141 S. W. 1186.

The evidence of the accomplices was to the effect that they and Thompson drove from Detroit, Michigan, to Ashland, Kentucky, in a Ford automobile which belonged to Thompson; the purpose of the trip was that Thompson was going to see a woman with whom he had become infatuated; Thompson had about $48 and Ledbetter $10 when the trio started out; after they had been in Ashland a few days they ran out of money; in talking over their plight Thompson said, "We have got to hold up a place"; about eight p.m. the party got in the car and started looking for someone to hold up; Thompson said, "You boys are not looking, there is a filling station over there with just one man in it"; Ledbetter and Washer got out of the car and robbed the filling station of about $75; Thompson waited around the corner from the filling station while the robbery was taking place; thereafter the parties went to Ironton, Ohio, where the money was divided; and they were apprehended after they had visited several night clubs.

Thompson's testimony up to the time of the robbery was substantially the same as that of his accomplices. When asked on direct examination whether he and the other boys planned to rob any place during the afternoon of the day the crime was committed, he answered, "Yes, sir." He said, however, he did not know where the filling station was nor where Washer and Ledbetter went after they got out of the car nor what they did while out of it. As to his actions at that time Thompson said:

"We drove for a while and one of them says, I don't know which, stop, I was in the middle of the

block, I just stopped and they says we will be back in a minute, and I says, I will park here, and I pulled over against the curb. They was gone just a few minutes and I heard somebody running and I turned back and came to the corner and they came down and got in the car, one in the front seat and one in the back.'' He said he drove on to Ironton and when he stopped in front of a restaurant the other boys got out and one of them gave him $20. From that point on his evidence was substantially the same as that for the Commonwealth. When the boys were arrested about $65 was taken from them.

As indicated heretofore, we think Thompson furnished the necessary corroborating testimony. He admitted that a robbery had been discussed a few hours before its commission. He placed himself at or near the place where the robbery was committed. He knew Washer and Ledbetter had no money when they left the car, and he admitted that when they reached Ironton he was given $20. The story might have been a different one had not Thompson taken the stand.

The second complaint is directed toward the admission of evidence tending to connect Thompson with the commission of another crime, namely, dealing in the black market gas racket. He admitted also he had been in other trouble about 10 years ago. Obviously, this evidence should not have been admitted, but we fail to see how it could have been prejudicial to Thompson's substantial rights. It cannot be said it had a tendency to inflame the jury against him, since he was given the minimum penalty for the offense, namely, 21 years; also he admitted facts conclusively proving his guilt.

Under the circumstances, we think the judgment should be and it is affirmed.